

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED**

MAR 2 2 2007
**CLERK'S OFFICE**
**U. S. DISTRICT COURT**
**EASTERN MICHIGAN**

ANTHONY MARTELL JACKSON,

      Petitioner,

                           CASE NO. 05-CV-73797-DT
v.                             HONORABLE ARTHUR J. TARNOW

KURT JONES,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

I.    Introduction

    Michigan prisoner Anthony Martell Jackson ("Petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner is confined at the Camp Lehman Correctional Facility in Grayling, Michigan.[1] Petitioner was convicted of possession with intent to deliver more than 650 grams of cocaine following a jury trial in the Wayne County Circuit Court in 2000 and is serving a sentence of six years and nine months to 15 years imprisonment. In his pleadings, Petitioner raises claims concerning the denial of a *Franks* hearing and prosecutorial misconduct. For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

_____

    [1]At the time he instituted this action, Petitioner was confined at the Carson City Correctional Facility in Carson City, Michigan where Respondent was the warden.

Jackson v. Jones
05-CV-73797-DT
Page 2 of 11

II.    Facts

Petitioner's conviction arises from a drug bust in Detroit, Michigan on July 21, 2000.

Petitioner's brief in support of his petition, which mirrors the statement of facts from his state

appellate brief, sets forth a detailed account of the relevant facts.  This Court accepts the factual

allegations contained in the habeas petition, insofar as they are consistent with the record, as

Respondent has not disputed them.  *See Bland v. California Dep't. of Corrections*, 20 F.3d 1469,

1474 (9th Cir. 1994).[2]

III.   Procedural History

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of

Appeals raising the same claims contained in the present petition, as well as a sentencing claim.[3]

The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded the case for re-

sentencing.  *People v. Jackson*, No. 249665, 2004 WL 2534364 (Nov. 9, 2004) (unpublished).

On remand, the trial court re-sentenced Petitioner to six years and nine months to 15 years

imprisonment.  Petitioner also filed an application for leave to appeal with the Michigan

Supreme Court, which was denied.  *People v. Jackson*, 472 Mich. 941, 698 N.W.2d 395 (2005).

Petitioner thereafter filed his federal habeas petition, asserting the following claims as

grounds for relief:

---

[2]A copy of Petitioner's facts is included as Appendix A to this opinion.

[3]He was originally sentenced to life imprisonment.  After remand for resentencing, he
was resentenced to 6 years 9 month to 15 years.

2

I.      The trial court erred in failing to grant the defense request for a hearing
        pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

II.     The prosecutor violated his state and federal constitutional due process
        rights to a fair trial when in closing argument he improperly appealed to
        the jury's civic duty to fight the "war on drugs," vouched for police
        witnesses, personally attacked defense counsel, improperly interjected
        issues broader that Petitioner's guilt or innocence, and shifted the focus
        from the proofs to the jurors' emotions and consciences.

Respondent has filed an answer to the petition contending that it should be denied.

IV.   <u>Analysis</u>

      A.     <u>Standard of Review</u>

      Federal law imposes the following standard of review for habeas cases:

      An application for a writ of habeas corpus on behalf of a person in custody
      pursuant to the judgment of a State court shall not be granted with respect to any
      claim that was adjudicated on the merits in State court proceedings unless the
      adjudication of the claim –

      (1)    resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
             determined by the Supreme Court of the United States; or

      (2)    resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
             State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

Jackson v. Jones
05-CV-73797-DT
Page 4 of 11

B.     Evidentiary Hearing Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court failed to

grant his request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Respondent contends that this claim is not cognizable upon habeas review.

Federal courts will not address a Fourth Amendment claim upon habeas review if the

petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of

the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*,

428 U.S. 465, 494-95 (1976).  A court must perform two distinct inquiries when determining

whether a petitioner may raise a claim of illegal arrest in a habeas action.  First, the "court must

determine whether the state procedural mechanism, in the abstract, presents the opportunity to

raise a fourth amendment claim.  Second, the court must determine whether presentation of the

claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213

F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

Michigan has a procedural mechanism which presents an adequate opportunity for a

criminal defendant to raise a Fourth Amendment claim. *See, e.g., People v. Ferguson*, 376 Mich.

90, 93-94 (1965) (motion to suppress), *People v. Harris*, 95 Mich. App. 507, 509 (1980).

Petitioner has not shown that a failure of that procedural mechanism prevented him from

litigating his claims.  The record reveals that Petitioner challenged the legality of the search and

seizure prior to trial.  The trial court denied the motion to suppress.  Petitioner again raised these

issues on direct appeal.  The Michigan Court of Appeals conducted a review of the Fourth

4

Amendment issue and concluded that Petitioner was not entitled to relief. *See Jackson*, 2004 WL 2534364 at *1-2.

Given this record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment issues and that he received all the process he was due. While Petitioner challenges the state courts' handling of his claims and their resulting decisions, he has not shown that the procedures were flawed such that he was unable to properly litigate the issues. Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims. Accordingly, his claim concerning the denial of an evidentiary hearing is not cognizable on habeas review pursuant to *Stone v. Powell, supra*. Habeas relief is not warranted on this claim.

C.     Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in various incidents of misconduct during closing arguments. Respondent contends that these claims lack merit.

It is well-settled that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The reviewing court's focus is on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra*, 4 F.3d at 1355).

5

Jackson v. Jones
05-CV-73797-DT
Page 6 of 11

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for

determining whether prosecutorial misconduct violates a defendant's due process rights. *See*

*Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must

determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding

of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is

determined by an examination of four factors: 1) whether the statements tended to mislead the

jury or prejudice the accused; 2) whether the statements were isolated or among a series of

improper statements; 3) whether the statements were deliberately or accidentally before the jury;

and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201

F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir.

1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so

pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as

probably to prejudice the defendant.'" *Pritchett*, 117 F.3d at 964 (citations omitted).

The Michigan Court of Appeals denied relief on Petitioner's prosecutorial misconduct

claims, stating in relevant part:

> Defendant argues on appeal that the prosecutor improperly used a civic-duty
> argument, vouched for prosecution witnesses, appealed to the jury's sympathy, and
> injected broader issues into the proceedings. Viewing the remarks in context, we
> find that most of the challenged comments were in the nature of strong and
> emotional argument that the prosecution witnesses were worthy of belief. *People
> v Wise*, 134 Mich App 82, 104; 351 NW2d 255 (1984). Although the prosecutor
> improperly denigrated defense counsel, the trial court sustained defendant's
> objection and instructed the jury that the issues in this case involved the evidence,
> not defense counsel. The court also instructed the jury as to the burden of proof,
> that the arguments of lawyers were not evidence and that it was the sole judge of

6

Jackson v. Jones
05-CV-73797-DT
Page 7 of 11

the evidence.  The jury is presumed to follow the instructions of the court. *People
v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).  Defendant was not denied
a fair and impartial trial as a result of prosecutorial misconduct.

*Jackson*, 2004 WL 2534364 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable

application of the law or the facts.  Petitioner first asserts that the prosecutor made an improper

civic duty argument by referencing the police "war on drugs" during closing arguments.  *See* Pet.

p. 21; Trial Tr. Vol. III, pp. 67-68.  Generally, a prosecutor cannot make statements "calculated

to incite the passions and prejudices of the jurors."  *United States v. Solivan*, 937 F.2d 1146,

1151 (6th Cir. 1991).  Even assuming that the prosecutor's remarks rose to the level of an

improper civic duty argument, any prejudice was cured when the trial court sustained the defense

objection to the comments.  *See Puertas v. Overton*, 168 Fed. Appx. 689, 701-02 (6th Cir. 2006)

(citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).  Further, the trial court's instruction to

the jurors that they must not let prejudice or sympathy influence their decision, *see* Trial Tr. Vol.

III, p. 71, defeats Petitioner's claim that he was deprived of a fair trial because of an improper

civic duty argument.  *See Cameron v. Pitcher*, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001).

Jurors are presumed to follow the court's instructions.  *See United States v. Powell*, 469 U.S. 57,

66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow

it.").

Petitioner next asserts that the prosecution improperly vouched for the credibility of the

police witnesses.  *See* Pet., pp. 23-24; Trial Tr. Vol. III, pp. 47-48, 67-68.  It is well-settled that it

7

Jackson v. Jones
05-CV-73797-DT
Page 8 of 11

is improper for a prosecutor to express his or her own personal beliefs and opinions concerning the credibility of a witness. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617-18, 2003 WL 152314, *7 (6th Cir. 2003) (citing cases).

Most of the prosecutor's arguments regarding the experience and credibility of the police officers were based upon reasonable inferences from the evidence. It is well-settled that a prosecutor has leeway to argue reasonable inferences from the evidence. *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). A prosecutor may also argue from the facts that a witness is or is not worthy of belief. *See, e.g, Portuondo v. Agard*, 529 U.S. 61, 69 (2000). Such comments by the prosecutor were not improper. To the extent that the prosecutor attempted to vouch for the police witnesses' credibility during closing arguments, such remarks were not so flagrant as to render the trial fundamentally unfair. Further, any prejudice to Petitioner was alleviated when the trial court sustained the defense objection to those remarks and subsequently instructed the jury that the attorneys' arguments were not evidence. *See* Trial Tr. Vol. III, pp. 48, 68, 73; *Puertas*, 168 Fed. Appx. at 701-02.

8

Jackson v. Jones
05-CV-73797-DT
Page 9 of 11

Petitioner next asserts that the prosecutor improperly appealed to jury sympathy by telling

them "not to shed a tear" for Petitioner and stating that he was a cocaine dealer. *See* Pet., p. 29;

Trial Tr. Vol. III, p. 70. These comments, however, were not improper. While the prosecution

used strong language and urged the jury not to be sympathetic to Petitioner, the prosecution did

not seek sympathy for victims nor urge the jury to convict Petitioner based upon prejudice. The

prosecutor's argument that Petitioner was a drug dealer was based upon a reasonable inference

from the evidence - the quantity and packaging of the drugs involved in the case. As such, the

argument did not constitute misconduct. *See Byrd*, 209 F.3d at 535.

Lastly, Petitioner asserts that the prosecutor denigrated defense counsel. *See* Pet., pp. 31-

32, Trial Tr., Vol. III, p. 67. It is clearly inappropriate for a prosecutor to make personal attacks

on opposing counsel. *See, e.g., United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). The

prosecutor's comment that defense counsel did not care about guilt or innocence was improper.

Again, however, the record reveals that the trial court sustained the defense objection to the

remark and instructed the jury that the trial was not about defense counsel and was about the

evidence. *See* Trial Tr., Vol. III, p. 67. The trial court's curative action mitigated the possible

prejudice to Petitioner. As noted, jurors are presumed to follow the court's instructions. *See*

*Powell*, 469 U.S. at 66. Lastly, given the overwhelming evidence of guilt presented at trial,

Petitioner cannot establish that he was unduly prejudiced by the prosecutor's conduct. Petitioner

has failed to demonstrate that the prosecutor's arguments rendered his trial fundamentally unfair.

Habeas relief is not warranted on these claims.

Jackson v. Jones
05-CV-73797-DT
Page 10 of 11

V.    <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas

relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.



ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE

DATED:  March 22, 2007


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record
on March 22, 2007, by electronic and/or ordinary mail.

Case Manager

10

Jackson v. Jones
05-CV-73797-DT

**APPENDIX A**

## STATEMENT OF FACTS

Defendant-Appellant Anthony Jackson was charged with possession with intent to deliver more than 650 grams of cocaine. MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). The charges arose after police officers broke down the door to an apartment that they claimed was rented by Mr. Jackson, whom they found inside and arrested. The police recovered a cooler, which was inside a duffel bag, which contained 771 grams of cocaine.[1] Following a four-day jury trial, the defendant was convicted of the charged offense. Wayne County Circuit Court Judge Carole F. Youngblood, who presided over the trial, sentenced Mr. Jackson to life in prison.

Detroit Police Officer John Hall testified that on July 21, 2000 he set up surveillance at 14939 Manning in Detroit. At approximately 12:15 p.m., he saw Mr. Jackson leave the house carrying a black duffel bag, get into a gold Yukon and drive away. He said he followed the vehicle to an apartment complex at 20450 Balfour in Harper Woods, at which time he ended his surveillance because he thought that Mr. Jackson had seen him. (T1 157-160).

Later that day, at approximately 5:00 p.m., he and five or six other police officers executed a search warrant at the Balfour apartment. They broke into the apartment complex door, knocked and announced their presence, and broke down the apartment door after what he said was a loud crashing noise from within the apartment. By the time he got into the apartment, Mr. Jackson was already detained. He stated that he saw cocaine in a cooler and a hand gun. He helped search the apartment where he found a key and papers indicating that the defendant resided at the apartment. (T1 160-167). He also said that he spoke with Mr. Jackson and, according to his testimony, Mr. Jackson told him that he had seen the officer following him

---

[1]The parties stipulated that the substance in the bag was cocaine and that it weighed 771.23 grams. (T2 112).

1

earlier in the day and that he had moved the cocaine from the Manning Street residence because of a police raid in that neighborhood a day or two earlier. The police and Mr. Jackson then went to the Manning Street residence where a search was conducted but nothing was seized. (T1 174-175).

During cross examination, Officer Hall testified that he was on surveillance alone that day for fifteen to twenty-five minutes. He did not record the surveillance on video or audio tape, nor did he use a dictaphone or take notes. He generated a preliminary complaint report (PCR) later that day in order to recall what occurred. There was nothing in the report about observing other people entering or leaving the Manning Street house. He said the drive from Manning to Balfour took less than ten minutes. During the police raid on Balfour, only seconds passed between knocking and breaking down the door. Officer Hall last saw Mr. Jackson at Manning Street between 6:00 p.m. and 7:00 p.m. (T1 179-184, 186-187, 195-196-197).

Officer Hall testified that he saw six bags of cocaine at the Balfour address, but he did not write it down in his PCR. He admitted that no law enforcement watched the Balfour apartment between the time he ended his surveillance around 12:30 p.m. and the time the raid occurred around 5:00 p.m. He said that Mr. Jackson was placed under arrest and was in police custody for several hours. Though he left Manning with everyone else, he did not accompany Mr. Jackson to the police precinct and did not see him there. (T2 4-15, 34).

Detroit Police Detective Daniel Mitchell testified that he was part of the team that raided the Balfour apartment. He said that after opening the apartment complex door with a tool, the police knocked and announced at apartment number 2, and broke down the door after hearing what he said was a loud thump and scuffling. He was the first officer to enter the apartment. He said he saw Mr. Jackson run in front of him with a gun in his left hand. Mr. Jackson complied

2

after the detective twice told him to drop the gun. According to him, Mr. Jackson said "thanks for not shooting me." (T2 38-44). He said he secured the apartment within two minutes and then logged in the seized evidence. He said the police seized a black bag containing a cooler with cocaine inside. They also seized keys, a Yukon, a gun, a cell phone, a computer, and proof of residency. (T2 45-56).

He continued to testify that the defendant was arrested and taken to Manning Street, where the house was searched. He took Mr. Jackson to the ninth precinct, and released him. He explained that Mr. Jackson expressed interest in cooperating with the police so he was released on a "not in custody warrant." He testified that Mr. Jackson did not cooperate as promised so a warrant was issued for his arrest. (T2 57-61, 69-70).

During cross examination, he testified that he was at Balfour for forty to forty-five minutes. He said that he completed a search warrant return at Balfour, but it did not include money or jewelry. Though he testified at the preliminary examination that he did not hear Mr. Jackson read his rights, he testified at trial that he did hear them read to him. (T2 71-79). There was nothing in his PCR about Mr. Jackson wanting to cooperate with the police. He did not take the defendant to the precinct to have him fingerprinted. It was not his decision to release Mr. Jackson as a cooperating defendant. (T2 86-91). On redirect examination he said it was for safety reasons that he did not write in his PCR that Mr. Jackson wanted to cooperate. (T2 95).

Detroit Police Officer James Lewis testified that he also helped execute the search warrant on Balfour. He said that they forced the exterior door open, knocked and announced on the apartment door, and when no one answered they forced that door open also. He heard Detective Mitchell shout "drop the gun." He testified that he seized a gun from Mr. Jackson and also found the cooler in the duffel bag containing cocaine. Following a search of the apartment

3

he went with the team and Mr. Jackson to Manning and performed a search. He then drove Mr. Jackson in the defendant's Yukon to the ninth precinct, where he removed the handcuffs and released him. But at the preliminary examination he testified that he was not present when Mr. Jackson was released. (T2 105-113, 125, 133).

On cross examination, he testified that he conducted some surveillance at Balfour, but not at Manning. However, during the preliminary examination, he testified that the raid was the first time he had been to Balfour. (T2 116-119).

Detroit Police Lieutenant Arthur McNamara testified that he was the ranking officer during the raid on the Balfour Apartment. The common door was forced open after yelling that it was the police, and the apartment door was also forced open after pounding on it and hearing a crashing noise. He said he heard Officer Mitchell yell "drop the gun." He saw Mr. Jackson's head pass by and he saw a weapon on the floor. He said that he kept Mr. Jackson on the floor and that he saw narcotics on the floor in a cooler that was inside a bag. Lieutenant McNamara testified that he read Mr. Jackson his Miranda rights. (T2 140-148). Mr. Jackson told him that he moved the drugs from Manning to Balfour because the Manning neighborhood was "hot." Mr. Jackson also told him that he wanted to cooperate with the police and provide information about other drug dealers. He explained that it is beneficial to be a cooperating defendant. The parties can approach the judge in chambers, disclose their deal, and negotiate a reduced sentence. (T2 153-156).

He continued to testify that they next went to the Manning address with a search warrant, but did not find any drugs. They then went to the ninth precinct parking lot, where Mr. Jackson was released. Upon releasing Mr. Jackson, Lieutenant McNamara tried to call Mr. Jackson on his cell phone, but he never heard from him again. (T2 157-160).

4

McNamara testified that he called the cell phone number Mr. Jackson gave him and he understood that number to be the defendant's father's house. (T2 160). During cross-examination he testified that he called the number and left a message on an answering machine. He did not write in his PCR that he called and left a message on an answering machine. He also stated that he called Mr. Jackson on his cell phone. He could not recall if he took the cell phone out of evidence and gave it back to Mr. Jackson. He was also given a pager number to call. (T2 171-173).

He further testified that he put selected information in his PCR to refresh his memory. He does not write down agreements to be cooperating witnesses. It was his decision what to write in the report and whether to even write a report. He did not memorialize the cooperative-defendant deal or the telephone calls. There was also no mention in the PCR about going to the Manning Street house. (T2 162-165, 171-175).

The prosecution rested and the defense moved for a directed verdict, which the court denied.

The sole witness for the defense was the defendant's father, Phillip Anthony Jackson, who testified that he was fifty-two years old and had worked construction for thirty-one years. He testified that he had an answering machine at his Southfield home and never received a call from Lieutenant McNamara. He was never informed that McNamara was trying to contact his son. He did not learn about his son's arrest until nine months after the fact. He had no contact with Officer Jackson. (T3 5-10).

Following closing arguments and jury instructions, the jury deliberated for approximately four hours before indicating that it could not agree on a verdict. (T3 89). The jury was dismissed for the day and resumed deliberations the next morning. Following six and a half

5

hours of deliberations, which occurred over two days, the jury returned a guilty verdict on the charged offense. The defendant was sentenced to life imprisonment. (ST 5-6).

The Court of Appeals granted the defendant's delayed application, limited to the following three issues raised in the application:   1) Defendant Jackson must be re-sentenced where the sentencing judge was under the misapprehension of law that a conviction for possession with intent to deliver over 650 grams of cocaine allowed her no discretion but to sentence Mr. Jackson to life in prison; 2) The trial court erred in failing to grant the defense request for a hearing pursuant to *Franks v Delaware*, 438 US 154; 98 S Ct 2675; 57 L Ed 2d 667 (1978); and, 3) The prosecutor violated Mr. Jackson's state and federal constitutional due process rights to a fair trial when in closing argument he improperly appealed to the jury's civic duty to fight the "war on drugs," vouched for police witnesses, personally attacked defense counsel, improperly interjected issues broader than Mr. Jackson's guilt or innocence, and shifted the focus from the proofs to the jurors' emotions and consciences.

Following oral arguments in the case, the Court of Appeals affirmed the conviction in an unpublished opinion per curiam.  However, it vacated the sentence and remanded the cause for re-sentencing.[2] *People v. Anthony Martell Jackson*, unpublished per curiam opinion of the Court of Appeals, decided November 9, 2004 (Docket No. 249665).

This application for leave to appeal now follows.

---

[2] By stipulation with the prosecutor, the defendant has requested that the re-sentencing be held in abeyance until this application for leave to appeal has been ruled upon.